IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY HARVEY, #42553-044,  Plaintiff, v. E. WILLIAMS, ASSOCIATE WARDEN CHEEKS, ASSOCIATE WARDEN SANTIAGO, CAPTAIN GORE, LT. PHILLIPS, and UNITED STATES OF AMERICA,  Defendants. | Case No. 22-cv-00148-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Jerry Harvey, an inmate in the custody of the Federal Bureau of Prisons and currently incarcerated at Federal Correctional Institution – Greenville ("FCI Greenville"), commenced this action by filing a demand letter to FCI Greenville staff directing them to rebut allegations in his affidavit regarding COVID-19 procedures. (Doc. 1). The Court struck the document, as it was an inadequate complaint. Plaintiff was granted leave to file a valid signed complaint. (Doc. 4). Plaintiff timely filed a complaint, but the Complaint was dismissed for failure to state a claim against any of the named Defendants. (Doc. 19). The Court gave Plaintiff an opportunity to replead his claims. Plaintiff then filed a First Amended Complaint that was also dismissed. He was granted one last opportunity to amend his pleadings.

The Second Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. §1915A. Any portion of the Second Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant

must be dismissed. 28 U.S.C. §1915A(b).

## SECOND AMENDED COMPLAINT

Plaintiff has filed two documents with the Court. The first document was docketed as a "Motion to Amend the Complaint" and is identical to the First Amended Complaint but adds the United States as a defendant. (Doc. 26). The second is this district's civil complaint form and was docketed as "Second Amended Complaint." (Doc. 28). As Plaintiff was already given leave to amend, the motion to amend is granted. The Court will construe the allegations in both documents together when reviewing Plaintiff's claims under Section 1915A. *See Otis v. Demarass,* 886 F.3d 639, 644 (7th Cir. 2018).

Plaintiff asserts that during COVID-19 lockdowns at FCI Greenville, the directives of the Center for Disease Control and the World Health Organization were not followed by prison officials. (Doc. 27, p. 6). Rather than prioritize the safety of inmates, staff took actions to "cash in on COVID" and acted in ways that would cause more infections so that they would receive hazardous duty pay and additional funding. (*Id.* at p. 5). Inmates were ordered to be locked in their cells without any concern for their mental or physical health. (*Id.*). Plaintiff states that he was celled with a cellmate who was 76 years old and in a wheelchair. (Doc. 28, p. 6). He asserts that he had to take care of his cellmate's "need[s] and health issues and my own as well." They were given no medical care and contracted COVID-19 twice. (*Id.*).

Plaintiff further alleges that administrative officials spent most of their time in the front office far away from the inmates. (Doc. 27, p. 3). They seldom, if ever, visited the area of the facility where inmates are housed and failed to ensure that proper COVID-19 safety protocols were followed. (*Id.*). Plaintiff asserts that the inaction of Defendants Williams, Cheeks, Santiago, Gore, and Phillips all contributed to the spread of the virus. Specifically, Warden Williams failed to ensure that the mandates of the Center for Disease Control and the World Health Organization

were followed. (Doc. 27, p. 2). Williams allowed staff to spread the virus from unit to unit without any supervision, as he was hardly present. (*Id.*).

Likewise, Associate Warden Cheeks did not supervise the staff members and allowed transfers from other prisons, which contributed to the virus spreading at FCI Greenville. (Doc. 27, p. 3). Cheeks did not make rounds to inquire about the health of the inmates and the issues associated with COVID-19. (*Id.*).

Plaintiff claims that Associate Warden Santiago was assigned to govern "programs, which included medical." (Doc. 27, p. 3). Santiago's negligence resulted in medical staff not changing gloves after contact with each inmate. (*Id.*). Santiago also did not separate and quarantine infected inmates. Rather, she kept sick inmates in their normal housing units and had a red card placed on their cell doors, which did not stop the spread of the virus. (*Id.* at p. 4).

Captain Gore is responsible for security at FCI Greenville and allowed transfers and new inmates to enter the facility, "intensifying the spread." (Doc. 27, p. 4).

Finally, Plaintiff states that Lieutenant Phillips failed to perform his duties by placing an inmate with COVID-19 in the "tank" with ten other inmates.[1] (Doc. 27, p. 5).

## DISCUSSION

Plaintiff indicates that he is bringing his claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("FTCA"). The FTCA authorizes "civil actions on claims against the United States, for money damages…for…personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel*

---

[1] Inmates were placed in the "tank" for refusing to return to their cells. (Doc. 27, p. 5).

*v. United States,* 746 F.3d 753, 758 (7th Cir. 2014).

In order to recover under the FTCA, administrative remedies must be first exhausted. *See* 28 U.S.C. §2675(a). "To exhaust administrative remedies, the plaintiff must 'have first presented the claim to the appropriate Federal agency,'…so that the agency has an opportunity to meaningfully consider and address the claim prior to suit." *Chronis v. United States*, 932 F.3d 544, 546 (7th Cir. 2019) (quoting 28 U.S.C. § 2675(a)). Although typically affirmative defenses such as failure to exhaust administrative remedies are litigated by the parties after service, a Court may invoke this defense on Section 1915A review when the availability of the defense is apparent on the face of the complaint. *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002). If a plaintiff has failed to exhaust his or her administrative claim before filing suit, the FTCA claims must be dismissed. *McNeil v. United Stat*es, 508 U.S. 106, 113 (1993); *Glade v. United States,* 692 F.3d 718, 723 (7th Cir. 2012).

Here, Plaintiff initiated this case on January 24, 2022, and then after the initial filing was stricken, he filed a Complaint on February 11, 2022. (Doc. 9). Along with the Second Amended Complaint, Plaintiff includes two denial of administrative claim letters dated April 14, 2022, and April 15, 2022. (Doc. 27, p. 8-9). In explaining his efforts to exhaust, Plaintiff cites to the letters stating he "was told to file in Federal Court," and he has "sent [his] only copies to the Court Clerk of this Court." (Doc. 28, p. 4-5). Based on Plaintiff's exhibits and statements, it is clear that at the time of initiating this suit, his FTCA claims had not been administratively exhausted. *See Ford v. Johnson,* 632 F. 3d 395-398-400 (7th Cir. 2004) (the "file suit now, exhaust later" is forbidden by the Prison Litigation Reform Act); 42 U.S.C. 1997e(a). Because he did not exhaust his administrative remedies *before* filing this lawsuit, the Second Amended Complaint fails to state a claim upon which relief may be granted and is dismissed without prejudice.

**DISPOSITION**

For the reasons stated above, the Motion to Amend is **GRANTED.** (Doc. 27). The Second Amended Complaint and this entire case are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies before filing suit. The Motion to Appoint Counsel is **DENIED as moot.** (Doc. 26).

Plaintiff may appeal this Order by filing a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If he does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger,* 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza,* 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

Plaintiff is **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable. 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk of the Court is **DIRECTED** to enter final judgment and to close this case.

**IT IS SO ORDERED.**

**DATED: November 20, 2023**

                                                 *s/Stephen P. McGlynn*
                                                 **STEPHEN P. MCGLYNN**
                                                 **United States District Judge**